v. Julia, 516-0325. My name is Tom Speedy. I represent the defendant appellant in this case, Julia Macri. Ms. Macri on October 22nd of 2015 was driving eastbound on Interstate 70 and was stopped in Madison County by two DEA task force officers and they gave her a warning ticket for an expired registration, quickly realized that they weren't going to be able to get a dog in time to do a dog sniff. Sent her on her way and called ahead to a friend of theirs who is a deputy sheriff in Fayette County who had previously also been a TFO with the Drug Enforcement Administration. He intercepted their vehicle, followed her for a period of time, I believe about 11 miles and ultimately pulled her over for both the expired registration and following too closely, allegedly she was one car length-ish behind the car in front of her. Pulled her over, wrote warning tickets for those two offenses, never delivered the warning tickets to her, reviewed her rental contract and realized that she was driving east in Illinois and her rental car contract expired in two days and her rental car was due in Salt Lake City, Utah in two days and started inquiring about that. Although clearly it was a valid agreement, the car was not stolen, he started inquiring. I thought there was something about the window was only rolled down a short amount, was this after that he saw that? Yeah, she rolled down the window I believe approximately six inches, handed her driver's license and the rental agreement through that and then he took the rental agreement back to the car and started writing warning tickets. The stop was initiated at 2.55 in the afternoon and he testified that by 3.05 he was done writing warning tickets, he was having some trouble running a warrant for a criminal background check because my client has two middle names and it's not exactly clear when that came back but it was sometime between 3.06 and the time that the dog arrived, that's I believe not in controversy. Before he was finished with all of what he was doing, the dog had arrived. Well, there's a question your honor. What did he say? Well, he actually initially testified fairly specifically that he had just concluded the criminal checks, he had concluded writing the tickets and he had just hung up the phone with Enterprise when the dog arrived. Okay. He then backed up a little bit and said he wasn't quite sure if he was still on the phone or not. I think it bugs me that he had concluded everything at the time that the dog had been rolled up. And basically that's what the trial court found? The trial court found that he may or may not have concluded the telephone call. Okay. But the question, I think one of the important questions here is whether the extension of the stop to investigate into her travel plans and the amount of time left on the rental car was an unconstitutional extension of the time of the stop. The statement's reply brief said, I believe's brief said that these were legitimate inquiries into her license, registration and travel plans. Rodriguez fairly specifically says that the scope of the stop can't be enlarged, I mean it's analogous to a Terry stop, and it can't be enlarged beyond the mission of the stop and reasonably related inquiries dealing with safety. So essentially writing the tickets, making sure the car's insured, making sure that the person isn't wanted, and that's the end of it. Making sure that they're going to be able to make it back before the rental agreement expires on a valid current rental agreement, which you can extend by a phone call, I don't think is part of ensuring the safety of the highways, which is the purpose of the stop. We know that the car isn't stolen. We know that there's a valid agreement in place. There's not a safety issue dealing with that. They're running out the clock so they can get the dog there. Like I said, the TFO agents in Madison County realized they couldn't get the dog there. I think that this officer should have realized the same thing, sent her on her way, and maybe called ahead to somebody in other county. I don't know, but... Counsel, does it come down to your argument, it comes down to whether or not this call on the rental agreement, you know, enlarged the time, you know, to unconstitutionally list your client. Is that what it is? We don't know whether he was still on the phone or he just got off the phone. I mean, you know, walking slow or anything like that. Right. There's no... I think that that is a huge part of it. I don't think it's the entirety of it. I think that the court could reverse based on one of two things, and that is, A, that the call to Enterprise Rent-A-Car was an impermissible extension of the stop, unconstitutionally broadened the purpose. And I think that's a very strong argument. I think that the court could also find, based on the record, that the dog sniff had not concluded until after he concluded his inquiry on everything. That he was done with everything before the dog was done walking around. If that's the case, if the court finds that, then before the dog was done walking around or before the dog could come in? I think before the dog's done walking around. I don't think that you... You can't expand... The dog sniff is clearly not related to the purpose for the stop. I mean, Cabalas tells you that. Rodriguez tells you that. So, if the dog sniff extends the stop beyond what the officer needs to address the purpose of the stop, that the sniff's invalid. It's constitutionally offensive. I believe that's... I think you could find either of those. But did the dog indicate on the first sniff, first wheel housing? The dog... That's what I thought I read. The dog... The dog was there for a few minutes. It took, you know, it took obviously a moment for the handler to get out of the car and get the dog to it. It didn't take too long after the dog... I thought it went to the first wheel housing. It was pretty... Left or right, I don't know. I don't think the dog arrived on scene. I think it's, you know, when the dog actually alerts. I believe that's appropriate, Your Honor. But I think that if the officer, if you found that the officer hung up at any time before the dog sat down, the dog alerted, that it's an impermissible extension. And again, I would reiterate that you can only extend a stop for things reasonably related to the stop, which are safety issues and traffic and protection issues. Travel plan issues, I just can't see how those are related. You can call Enterprise and say, hey, I'm going to need the car for three more days. We have a misunderstanding. I mean, I thought I rented it for a week and a half, and I have a five-day rental agreement. You know, end of inquiry as soon as we determine that it hasn't been kept beyond rental return date. So you don't put any extension of time on the, I hate to keep going back to the window being down six inches, which the police, I thought he testified that that's a normal situation where there's marijuana involved. Well, he said that it's often, often people will do that to keep owners from escaping the car. Right. He conceded that he had, until the data arrived, he had no probable cause to make the search. He didn't really talk in terms of reasonable suspicion. There's a Poland case, which is an Illinois appellate case, where two gentlemen were pulled over and couldn't give the same answer to the police officer's question regarding whose funeral are you going to? Driver said one thing, passenger said another. The court ruled that that wasn't enough. So I don't think that rolling down your window six inches and having a rental car agreement that expires in two days is enough if, you know, it's not nearly as, I don't think it's nearly as telling as having, you know, asking where you're going and the answer is to a funeral and whose funeral are you going to, and you get two different answers to that question. Well, now, apparently he looked, and we can extend a little bit. He looked, did he look in and see the bags through the driver's window? Weren't there bags in the back seat and in the trunk or just in the trunk? There weren't bags in the back seat and in the trunk. I don't know that he saw them. He said he saw them at one time, but I don't know. He saw them in the trunk, I believe. I can't read there. Okay, thank you. He did see bags and pillows through the window, though. We can see that. Thank you, Your Honor. Thank you. May it please the Court, Counsel, Chelsea Kastner on behalf of the State. Your Honors, there's not a stopwatch set that allows only so much time for an officer to conduct a traffic stop and do their job. In this particular case, the reasonableness of the traffic stop is examined under the principles of Terry v. Ohio and looks at whether the officer's actions were justified at its inception and whether it was reasonably related in scope to the circumstances that initially justified the stop. An officer is justified in stopping and briefly detaining a driver when he or she observes the driver commit a traffic offense. The dog sniff did not change the character of the traffic stop and was conducted in the time reasonably required to complete the mission of issuing a warning ticket and reasonably investigate, because of reasonable suspicion, the issue of the rental car agreement. Great deference is given to the trial court in this case about its factual findings. Officer McElroy was called in advance by two officers being told that they had pulled over a woman and that her activity had been suspicious but that they were not able to get a dog there in time. That was all that the officer was told. He was told and advised to create his own case and probable cause to pull over the individual and when he found the vehicle, yes, he noted that her license plate tag was expired but he also pulled her over for following too closely, which the trial court noted. They did not tell the officer any details about her suspicious activity and it was only upon first approaching the defendant that Deputy McElroy learned that the defendant had even been issued a warning ticket already by the first set of officers. Your Honor asked him specific questions regarding multiple factors that gave rise to reasonable suspicion on the part of Deputy McElroy. Yes, she did overrode on the window six inches and he testified that based on his previous experiences, drivers tend to do that when they don't want odor to be emitted from their car. However, he gave a lot more factors that he noted from the defendant in this case, including the fact that she was very agitated and uncooperative. The vehicle had a very hard, winded appearance. There were large shuffle bags in the back seat, including one that was partially covered with a blanket or a pillow that the deputy felt someone would do if they were trying to hide the bag. How did he see that? That was my question. Your Honor, I believe he looked through the tinted window and saw it. I believe that was the testimony. In addition to that, the officer asked the defendant to please step out of her car while he called Enterprise about the rental agreement and she refused to get out of the car. However, she did tell Deputy McElroy to call Enterprise because he just wasn't believing her story. She could have said she was planning on extending the agreement. However, he had enough reasonable suspicion to further inquire into what exactly this woman was doing. The trial court found the call from Enterprise could have been ongoing while the canine was going around the defendant's vehicle. And in this case, the dog did alert almost immediately at both wheel wells, which given the large quantity of marijuana that was found in the car, it's understandable that the dog's nose was working pretty well. Given the fact that the defendant told the officer to call Enterprise, there's not much argument that can be made that the call wasn't permissible when it was done at her permission. Additionally, your honors, in looking at the timeline, perhaps it was a little bit longer than would have normally been done for an initial stop. However, I think that was easily explained given the fact that she has two middle names and so he had to run both of them individually and then together in order to get a complete criminal history because you never know how that is going to turn out. In addition, your honors, the officer explained why it was necessary to run the criminal history in the first place. That can be found in the record on page 247 where he explained there was enough time for someone somewhere to enter a warrant. It was just basic routine for them to run that check. The state argues that the trial court properly found that the stop was not impermissible nor were they unduly delaying so that the dog could get there in time to conduct the air sniff. Therefore, this court should affirm the ruling of the lower court unless this court has any questions for me. Thank you. Your honors, I have no quarrel with the fact that this took longer than normal because my client has two middle names and that certainly extended the time of the stop. It did not, however, extend the time of the stop under constitutionally permissible scope of the stop long enough for them to get the dog out. As I said, the polling case, two people that can't answer the question what funeral are you going to, did not rise to the point of independent reasonable suspicion. Certainly, you open the window that much, I understand that that may be unusual, but it's not like you're just cracking the window like I've seen people do in the UIRS to shove their license and insurance out. That would certainly give rise to a lot more suspicion if you were talking about rolling it down an inch or less. I've been on numerous road trips in my life and certainly my car always has a lived-in appearance and probably some bags under some pillows in the back of the car. I don't think any of that, even put together, rises to independent reasonable suspicion to prolong the search, even including the rental car agreement. What about this bribe that your client told the law enforcement, go ahead and make the call? Yeah, I don't know if that was a request or acquiescence. I don't know if it was, you know, she hit a point of frustration where she just said just call, you know, call them if you want to or if she said, well, if you want to call them, straighten that out. I know that she was aggravated because she'd been stopped twice in less than an hour for having expired registration. And the state brings that up in their brief. However, I think that the officer's concern wasn't the registration so much as the rental car end date. The, I don't, it's still a fishing expedition. I mean, that's the short answer. It's not, there should be no, once the officer makes the determination that the car is installed and it still has some time left on the agreement, there's nothing related to the traffic stop left with regards to that. You're expanding the scope to look into something else. Obviously, he's got suspicion that she's got drugs in the car. She's got a whole bag in the car. She's got, you know, if you roll the windows down, I understand that he had suspicion. But the short answer is you can't extend the traffic stop. Mike's reasonable independent suspicion, it's not, it's suspicion based on a number of things, including he just got called by some DEA agents. That's not independent suspicion. And he goes, you know, she goes up the road. She, and he's trying to drag this out. On the video, you know, the other officers are kind of like, where's the dog? Stuck in traffic. You know, they're aggravated, they're agitated. They don't want to let go of this case. They could have let go of the case. Somebody else down the road could have made a better case. They didn't. Unless your honors have any more questions, that's. No questions. Thank you. All right. Thank you, counsel, for your arguments. We'll take this matter under advisement and render a decision due course. And that concludes the case that we're hearing today.